SHOWMETHEMONEY CHECK CASHERS, INC. *v.*
Wanda WILLIAMS and Sharon McGhee

99-1398                                    27 S.W.3d 361

Supreme Court of Arkansas
Opinion delivered September 21, 2000

*The Rose Law Firm, A Professional Association*, by: *Allen W. Bird II*, for appellant.

*Friday, Eldredge & Clark*, by: *R. Christopher Lawson* and *Chris A. Averitt* and *Morgan & Turner*, by: *Todd Turner*, for appellees.

*Stacy J. Canan* and *Deborah M. Zuckerman* and *Bond & O'Brien*, by: *Will Bond*, for brief of *amici curiae*.

L AVENSKI R. SMITH, Justice. Appellant Showmethemoney, Inc. ("Showme") appeals the Clark County Circuit Court's denial of its Motion to Arbitrate the claims of Appellees Wanda Williams and Sharon McGhee. Williams and McGhee filed a class-action lawsuit against Showme alleging it had violated Arkansas's usury law. Showme argues that the trial court erred by not enforcing language contained in a "Check Cashing Agreement" prepared by Showme and signed by the appellees which purported to require arbitration of all claims. We disagree and affirm.

*Facts*

Showme entered into agreements with its customers wherein the customers obtained up to $100 cash in return for checks of equal amount plus a $15 "check cashing fee." Showme promised to hold the checks and deposit them on an agreed date in the future usually coinciding with their next periodic payment from an employer or other payer. In August 1998, McGhee received a cash advance from the Conway Showme office, where she received $300

cash and provided Showme with three $115 checks ($345 total) to be cashed when she got her next paycheck.

In January 1999, Williams received a cash advance from the Arkadelphia Showme office, where Williams took out a $200 loan and provided Showme with two $115 checks ($230 total) to be cashed when she got her paycheck. Both women did not repay the loans or have their checks cashed on the following payday. Instead, both women returned to the Showme offices, paid an additional $15 for each check ($45 total for McGhee; $30 total for Williams) so that Showme would again hold the checks until the following payday. Both women repeated this process several times. For instance, McGhee ultimately paid $720 in "fees" over an eight-month period on the original $300 advance without reducing the principal of the debt.

On February 5, 1999, Williams filed a class-action complaint against Showme alleging that the cash loans provided by Showme violated the Arkansas usury laws as stated in Article 19, Section 13 of the Arkansas Constitution and Ark. Code Ann. § 4-57-101 to § 4-57-108 (Repl. 1996). Showme filed a motion to dismiss and to compel arbitration on February 26, 1999, alleging that Williams's complaint violates the Arkansas Uniform Arbitration Act because the parties agreed to arbitrate such issues in the loan agreement signed by Williams. In addition, Showme argued that Williams's complaint should be dismissed under Ark. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Williams proceeded to file requests for discovery, and Williams and McGhee filed an Amended Class Action Complaint around July 8, 1999, restating the cause of action in the original complaint, but adding McGhee as an additional class representative based on her claims against Showme. Showme again filed a motion to dismiss and compel arbitration on July 27, 1999.

The trial court held a hearing on August 6, 1999, to consider the pleadings and motions filed by the parties. Showme presented testimony from Robert A. Srygley, owner of Showme, and counsel for the appellees cross-examined the witness. Srygley was the only witness at the hearing. Counsel for both parties argued before the trial court, and the court issued its oral ruling at the hearing,

denying both the motion to dismiss and motion to compel arbitration.

Following the hearing, the court issued its order on August 26, 1999. In its order, the court denied Showme's motion to dismiss, finding that the appellees's amended complaint stated a cause of action for usury under Arkansas law, and further found that the arbitration clause was unconscionable and unenforceable as well as conflicting and potentially illegal should the usury claim be found to be true. Consequently, the trial court denied the motion to arbitrate under either the Arkansas or Federal Arbitration Acts. On November 29, 1999, Showme filed its appeal from the denial of its motion to arbitrate.

### Jurisdiction and Standard of Review

■ Our jurisdiction arises under Ark. R. App. P.—Civ. 2(a)(12). The denial of a motion to compel arbitration is an immediately appealable order. *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999); *Terminix Int'l Co. v. Stabbs*, 326 Ark. 239, 930 S.W.2d 345 (1996); *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994).

Our review of the trial court's denial of a motion to compel arbitration is de novo. *Walton v. Lewis*, supra. (decision made under Federal Arbitration Act)[1]

### Arbitration clause

On appeal, Showme argues that both the Arkansas Arbitration Act and the Federal Arbitration Act apply, and that both require arbitration of this usury claim pursuant to the contract language to which Williams and McGhee, as well as all other possible class members, agreed. Showme's written "Check Cashing Agreement," in addition to detailing the amount of the loan and terms of repayment, also contained language which Showme contends constitutes

---

[1] Although we have not previously established a review standard under the Arkansas Uniform Arbitration Act the subject language contained in Ark. Code Ann. §16-108-201 (Supp. 1999) is identical to the language in the federal act.

a valid arbitration clause. The subject language in the agreements states:

> All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this agreement as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach, continuance, or termination thereof, as well as whether the controversy or dispute is subject to arbitration, and the amount of any loss or damage, shall be submitted to arbitration pursuant to Ark. Code Ann. § 16-108-201, ET SEQ., except, only, insofar as actions of Showmethemoney Check Cashers, Inc., to collect amounts due it.

> The parties hereto stipulate and agree that this provision for mandatory arbitration shall be a complete defense to any suit, action or proceeding instituted in any federal, state or local court or before any administrative tribunal with respect to any controversy or dispute arbitrable under the terms hereof, which terms requiring arbitration shall survive the termination or expiration of the agreement involved.

> The parties specifically state their understanding that Showmethemoney Check Cashers, Inc., cannot be sued in any court or (sic) any controversy or dispute.

██ The issue presented by this case is whether this language created a valid and enforceable arbitration agreement under Arkansas law. The Arkansas Uniform Arbitration Act, found at Ark. Code Ann. § 16-108-201 to § 16-108-224, outlines the scope of arbitration agreements in Arkansas. Ark. Code Ann. § 16-108-201 states:

> (a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

> (b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that this subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor

to any insured or beneficiary under any insurance policy or annuity contract.

Ark. Code Ann. § 16-108-202 further states:

Proceedings to compel or stay arbitration.

(a) On application of a party showing an agreement described in 16-108-201 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

(c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subdivision (a) of this section, the application shall be made therein. Otherwise, and subject to 16-108-218, the application may be made in any court of competent jurisdiction.

(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section, or, if the issue is severable, the stay may be with respect thereto only. When the application is made in the action or proceeding, the order for arbitration shall include the stay.

(e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.

These two statutes, read together, provide that a party in a lawsuit may apply to the trial court to obtain a stay of the proceedings and an order for arbitration pursuant to their agreement. The party resisting arbitration may only dispute the existence or validity of the agreement to arbitrate.

■ In Arkansas, as a matter of public policy, arbitration is strongly favored, and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. *May Constr. Co. v. Thompson*, 341 Ark. 879, 20 S.W.3d 345 (2000); *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996); *Lancaster v. West*, 319 Ark. 293, 891 S.W.2d 357 (1995); *see also, Estate of Sandefur v. Greenway*, 898 S.W.2d 667 (Mo. App. W.D. 1995). If there is no case law and no compelling policy on an issue, provisions of the Uniform Arbitration Act should be construed consistent with the decisional law of other states that have adopted the Act. *May Constr. Co. v. Thompson, supra; Heineman v. Charno*, 877 S.W.2d 224 (Mo.App.W.D. 1994). Arbitration is simply a matter of contract between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).

■ The question of whether a dispute should be submitted to arbitration is a matter of contract construction. *International Union, United Auto., Aerospace, & Agri. Implement Workers of Am. v. General Elec. Co.*, 714 F.2d 830 (8th Cir. 1983). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). Therefore, the court should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, with doubts and ambiguities being resolved in favor of arbitration. *Id*. The Federal Arbitration Act and the laws of other jurisdictions do not restrict the scope of arbitration as we do in this state. Under Arkansas law, certain matters are not arbitrable, regardless of the language used in an arbitration agreement. *Terminix Int'l Co., supra*. Generally, the scope of arbitration is defined by the contract between the parties, *see Anthony*, supra, and the Act contemplates that the courts will effectuate this agreement.

■■ The preliminary issue in this case is whether the subject language constitutes a valid contract to arbitrate. Showme stated during oral argument that it contended that the relationship between the parties consisted of three separate contracts. One of those contracts was an agreement to arbitrate. Again, the same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *May Constr. Co., Inc. v. Benton Sch. Dist. No. 8, supra*. The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4)

mutual agreement, and (5) mutual obligations. *Foundation Telecommunications v. Moe Studio*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Hunt v. McIlroy Bank & Trust*, 2 Ark. App. 87, 616 S.W.2d 759 (1981). Of particular importance to this case is the element of mutuality of obligations. The concept of "mutual obligations" has been explained by this court as follows:

> A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party." . . . [M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

*Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 954-955, 363 S.W.2d 535, 537 (1963) (quoting *El Dorado Ice & Planing Mill Co. v. Kinard*, 96 Ark. 184, 131 S.W. 460 (1910) (citations omitted)). Mutual promises that constitute consideration for each other are the classic method of satisfying the doctrine of mutuality. *Odom Antennas, Inc. v. Stevens*, 61 Ark. App. 182, 966 S.W.2d 279 (1998) (citing *J.L. McEntire & Sons, Inc. v. Hart Cotton Co.*, 256 Ark. 937, 511 S.W.2d 179 (1974)).

■ Our courts have never specifically addressed the question of mutuality in an arbitration contract. However, construing similar language, several federal courts have found that lack of mutuality to arbitrate in arbitration clauses renders the clauses void as to the bound party. In *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir. 1985), the Court of Appeals determined that New York law required mutual obligations to arbitrate to render the clause valid. In *Hull,* the arbitration agreement only required one of the parties to submit to arbitration, while the other party did not have to. The Court of Appeals found that this rendered the provision invalid because there was no mutuality of consideration. In *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997), the Court of Appeals determined that Indiana law required the same, and also concluded that it could not find other consideration in the contract

to balance one parties' obligation to arbitrate where the other party was not required to. The opposite conclusion was found, however, in *Design Benefit Plans, Inc. v. Enright*, 940 F.Supp. 200 (N.D. Ill. 1996), where the District Court found that other consideration existed under Illinois law to support a one-sided arbitration requirement.

██ ██ Ultimately, these federal cases interpreting state contract law indicate that it is state law that must be considered to determine an obligation of mutuality. Arkansas precedent on mutuality requires that the terms of the agreement must fix a real liability upon both parties. *Townsend, supra.* In the instant case, a review of the arbitration contract within the "Check Cashing Agreement" indicates that it fixed no real liability upon Showme. Showme drafted the language and specifically reserved to itself the right to institute legal action "to collect amounts due it." Under the terms of the agreement the only performance due Showme by its customers is payment. While the customers must submit all disputes and controversies of every kind and nature to arbitration, Showme may proceed immediately to court to collect amounts due it.[2] Those amounts could include twice the amount of the check, a $20 collection fee, a reasonable attorney's fee, and court costs. Additionally, the so-called arbitration clause contains a limitation of remedies statement that forbids suit against Showme under any circumstances. Given the lack of mutuality to support the arbitration agreement, we hold the arbitration clause contained in the "Check Cashing Agreement" does not constitute a valid enforceable agreement to arbitrate and affirm the trial court's denial of Showme's application to compel arbitration. The laudable policy behind enforcing arbitration agreements is the belief that they provide a less expensive, more expeditions means of settling litigation and relieving congested court dockets. However, they should not be used as a shield against litigation by one party while simultaneously reserving solely to itself the sword of a court action. Having held the arbitration agreement invalid, we do not address questions of unconscionability and legality.

---

[2] We note that some jurisdictions have found that an agreement that requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts, is presumptively unconscionable. *Ramirez v. Circuit City Stores, Inc.* 90 Cal. Rptr. 2d 916 (1999).

Affirmed.

GLAZE, J., not participating.