E-Z CASH ADVANCE, INC. *v.* Deborah HARRIS

01-570                                    60 S.W.3d 436

Supreme Court of Arkansas
Opinion delivered December 6, 2001
[Petition for rehearing denied January 10, 2002.]

*Hopkins & Allison, a Professional Association,* by: *Gregory M. Hopkins* and *Jeffrey C. Humiston,* for appellant.

*Morgan & Turner,* by: *Todd Turner,* and *Orr, Scholtens, Willhite & Averitt, PLC,* by: *Chris Averitt,* for appellee.

D ONALD L. CORBIN, Justice. Appellant E-Z Cash Advance, Inc., appeals the order of the Pulaski County Circuit Court denying its motion to compel arbitration. For reversal, E-Z Cash argues that a contract signed by Appellee Deborah Harris contained a valid arbitration clause, thus preventing her from filing suit in circuit court. We disagree, and thus, affirm.

This appeal stems from a dispute regarding the legality of certain loan transactions involving E-Z Cash and Harris. E-Z Cash is a corporation that is in the business of providing cash loans to individuals who present personal checks that are held until the borrower's next payday. These transactions are commonly referred to as "payday loans." In June 2000, Harris presented E-Z Cash with a personal check in the amount of $400 that it agreed to hold until Harris's next payday. Harris was then required to return to E-Z Cash to either redeem the loan for the full face amount of the check or to renew the loan. She decided to renew the loan by paying the interest and presenting a new check for the original amount of the cash received, plus an additional service charge for the extended term. As part of the transaction, Harris signed an "Arkansas Deferred Presentment Agreement," stating that there was a check cashing fee of $40, as well as a $10 deferred presentment fee. This form also stated that the $50 constituted a finance charge, with an annual percentage rate of 372.4 percent. Thereafter, Harris received $350 in cash. Harris continued this arrangement with E-Z Cash until August 3, 2000.

After Harris encountered difficulties repaying the interest due on her loans, she filed suit, individually and on behalf of similarly situated persons, against E-Z Cash. In her complaint, Harris alleged that E-Z Cash violated Article 19, § 13, of the Arkansas Constitution by charging interest in an amount exceeding the maximum allowable rate. Specifically, Harris averred that the "service charge" imposed by E-Z Cash amounts to interest, as the term is used in Section 13, and the annual interest rates range anywhere from 300 to 720 percent, thus violating Arkansas's constitutional prohibition against usury. Harris requested that she be appointed as a representative of the class and prayed for judgment in an amount equal to twice the interest paid by each member of the class, costs, and

attorney's fees. Harris also requested that the court declare the contracts at issue null and void.

E-Z Cash responded with a motion to dismiss Harris's suit on the ground that Harris signed a valid arbitration agreement and was thus barred from bringing suit in circuit court. In her response to the motion to dismiss, Harris contended that the circuit court should follow the reasoning of other jurisdictions that have refused to compel arbitration, particularly in situations involving payday loan transactions where the underlying loan transactions are illegal or unenforceable. E-Z Cash then filed a motion to compel arbitration. Harris responded that the contracts are void *ab initio* and are therefore invalid, and as such, a void contract may not be arbitrated.

The trial court held a hearing on the motion to compel on January 18, 2001. No witnesses testified, but attorneys representing both parties presented their arguments to the court. The trial court orally denied the motion to compel, stating from the bench:

> I've got to deny it, of course. I mean I've read the contract and it's almost like an adhesion clause. Plus, there's, of course, similar cases on this.

> This is a one-sided contract in regard to arbitration. I don't see any other way to read it. There's no obligation on behalf of check cashiers to do anything but sue them.

In its written order, filed January 25, 2001, the trial court denied the motion to compel, as well as the motion to dismiss, because the arbitration clause was contained in an adhesion contract, was one-sided, and unfair. The court further found that the agreement lacked mutuality, and was therefore unenforceable against Harris. From that ruling, comes the instant appeal.

■ At the outset we note that an order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.—Civ. 2(a)(12); *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000); *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999). We review a trial court's order denying a motion to compel *de novo* on the record. *Id.*

## I. Arkansas Law Governs

E-Z Cash's first point on appeal is twofold. First, it argues that this court should apply the provisions of the Federal Arbitration Act ("FAA") to determine whether or not there is a valid arbitration agreement in this case because the underlying transactions involve commerce. E-Z Cash then avers that the FAA declares a strong public policy in favor of arbitration that mandates the enforcement of arbitration agreements. Thus, according to E-Z Cash's logic, this court should enforce the arbitration agreement in this case because public policy requires as much.

■ Harris argues that neither the FAA nor the Arkansas Arbitration Act are applicable here, because the contract at issue is usurious and, therefore, void. Alternatively, Harris argues that there is no enforceable agreement to arbitrate because the agreement lacks the required element of mutuality. We are unable to reach the merits of Harris's argument regarding the usurious nature of the contract because she failed to obtain a ruling from the trial court on this argument. Her failure to obtain such a ruling is a procedural bar to our consideration of this issue on appeal. *See Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000).

■ While we decline to reach the merits of Harris's argument that the contract is usurious, we also disagree with E-Z Cash's assertion that the FAA governs this case. The United States Supreme Court in *Southland Corp. v. Keating*, 465 U.S. 1 (1984), held that the FAA may be applicable in both state and federal courts. Here, though, the arbitration agreement under the heading "Assignment and Choice of Law" specifically states: "We may assign or transfer this Agreement or any of our rights hereunder. This Agreement will be governed by the laws of the State of Arkansas, including without limitation the Arkansas Arbitration Act." In *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), the United States Supreme Court held that application of the FAA may be avoided where the parties agree to arbitrate in accordance with state law. Accordingly, Arkansas law, including the Arkansas Uniform Arbitration Act, governs the issue at hand.

## II. Validity of Arbitration Agreement

We now turn to the issue of whether there is a valid and enforceable arbitration agreement in this case. E-Z Cash argues that the trial court erred in finding that the arbitration agreement was not an enforceable agreement. According to E-Z Cash, a two-part analysis must be utilized to determine whether there was a valid agreement between Harris and E-Z Cash that commits the issue to arbitration. First, the court must determine whether there is a valid arbitration agreement. Then, the court must determine if that arbitration agreement covers the dispute between the parties. Harris counters that the arbitration agreement is not enforceable because it is not supported by mutual obligations. In light of this court's recent decision in *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361, we agree with Harris that this arbitration agreement is unenforceable.

The Arkansas Uniform Arbitration Act, found at Ark. Code Ann. § 16-108-201—224 (1987 and Supp. 2001), outlines the scope of arbitration agreements in Arkansas. Section 16-108-201 states:

> (a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

> (b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that this subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.

Section 16-108-202(a) further states:

> On application of a party showing an agreement described in § 16-108-201 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue

so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

■ Clearly, under the foregoing statutory provisions, a party resisting arbitration may dispute the existence or validity of the agreement to arbitrate. *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361.

■ ■ This court has held that arbitration is a matter of contract between parties. *See May Constr. Co. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 895 S.W.2d 521 (1995). There, this court stated:

> The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally, thus we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. 5 Am. Jur. 2d § 14; and *see Prepakt Concrete Co. v. Whitehurst Bros.*, 261 Ark. 814, 552 S.W.2d 212 (1977). It is generally held that arbitration agreements will not be construed within the strict letter of the agreement but will include subjects within the spirit of the agreement. Doubts and ambiguities of coverage should be resolved in favor of arbitration. 5 Am. Jur. 2d § 14; Uniform Laws Annotated, Vol. 7, Uniform Arbitration Act, § 1, Note 53 (and cases cited therein).

*Id.* at 149, 895 S.W.2d at 523 (quoting *Wessell Bros. Foundation Drilling Co. v. Crossett Pub. Sch. Dist., No. 52*, 287 Ark. 415, 418, 701 S.W.2d 99, 101 (1985)). Moreover, the construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001); *May Constr. Co. v. Thompson*, 341 Ark. 879, 20 S.W.3d 345 (2000).

■ E-Z Cash attempts to distinguish this case from that in *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361, by arguing that all of the essential elements of a valid contract are present in their agreement. In *Showmethemoney*, this court held that the essential elements of a contract include: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *See also Foundation Telecomms., Inc. v. Moe Studio Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). This court ultimately held that the arbitration agreement at issue in *Showmethemoney* was invalid because of a lack of mutual obligations. Specifically, the fact that the check casher had the right to seek redress in a court of law, while the customer was limited strictly to arbitration, demonstrated a lack of mutuality. This court explained:

A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. ". . . [M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

342 Ark. at 120, 27 S.W.3d at 366. Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361; *Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 363 S.W.2d 535 (1962). There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *See Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361.

A review of the instant arbitration agreement reveals that there is no real liability imposed upon E-Z Cash. The arbitration agreement provides in relevant part:

> *ADDITIONAL TERMS AND CONDITIONS OF THIS AGREEMENT*
>
> *RETURNED CHECK CHARGE AND COLLECTION COSTS.* If the Check is returned to us from your financial institution due to insufficient funds, closed account, or a stop payment order, we have the right to all civil remedies allowed by law to collect the Check and shall be entitled to a returned check fee of $20.00, court costs and reasonable attorney fees pursuant to Act 1216 of 1999, § 6(g).
>
> . . . .
>
> 1. For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Applicant/Personal Information Form (the Application), this Agreement (including this arbitration provision and the fees

charges) or any prior agreement or agreements between you and us; (b) all counter claims, cross–claims and third–party claims; (c) all common law claims, based upon contract, tort, fraud and other intentional torts; (d) all claims based upon a violation of any state or federal constitution, statute or regulations; (e) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (f) all claims asserted by you individually, as a private attorney general as a representative and/or member of a class of persons, or in any other representative capacity, against us and/or any of our employees, agents, officers, shareholders, directors, or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief.

2. Except as provided in *Paragraph 4* below, all disputes, including the validity of this arbitration provision *shall* be resolved by binding arbitration. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of any of the following arbitration organizations to administer the arbitration: the *American Arbitration Association (1-800-778-7879), J.A.M.S.,/Endispute (1-800-352-5267)*. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail, return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If we or a related third party demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitrator organization. The parties to such dispute will be governed by the rules and procedures of such arbitration applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this agreement, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

. . . .

4. ALL PARTIES, *INCLUDING RELATED THIRD PARTIES, SHALL RETAIN THE RIGHT TO SEEK ADJUDICATION IN*

*A SMALL CLAIMS TRIBUNAL FOR DISPUTES WITHIN THE SCOPE OF SUCH TRIBUNAL'S JURISDICTION.* Any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal *shall* be resolved by the binding arbitration set out in this Agreement. Any appeal of a judgement from a small claims tribunal *shall* be resolved by binding arbitration.

E-Z Cash argues that there is mutuality here because the agreement requires that both parties submit to arbitration, unless a matter falls within the exception for actions pursued in small claims courts. This argument is disingenuous, however, in light of the preceding provision governing collection of debts. Clearly, under that section, E-Z Cash has the right to pursue all civil remedies when a borrower's check is returned by his or her financial institution. Thus, E-Z Cash may sue to collect the amount of the returned check, plus seek to recover a $20 returned check fee, court costs, and reasonable attorney's fees. Taking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration. Harris and other borrowers, however, do not have the same ability to seek relief in the court system. Thus, the agreement to arbitrate is not supported by sufficient consideration, because Harris is the only party that has promised to forego her rights to seek redress in the court system. As previously stated, Harris's promise to submit to arbitration is not enforceable, because E-Z Cash has the option of pursuing arbitration or bringing suit in court. Because this arbitration agreement lacks the element of mutuality, it is not a valid and enforceable agreement. Accordingly, the trial court did not err in denying E-Z Cash's motion to compel arbitration.

Affirmed.

GLAZE and IMBER, JJ., not participating.