74 S.W.3d 600 (2002)
348 Ark. 459
CASH IN A FLASH CHECK ADVANCE OF ARKANSAS, L.L.C., Yvonne Clark, and Robert E. Blake,
v.
Jimmie Sue SPENCER and Dorothy Barnes, Individually and on Behalf of a Class of Similarly Situated Persons.
No. 01-1210.
Supreme Court of Arkansas.
May 9, 2002.
*602 Crone & Mason, PLC, by: Alan G. Crone, Memphis, for appellant.
Todd Turner and Dan Turner, Arkadelphia; and Orr, Sholtens, Wilhite & Averitt, by: Chris Averitt, Jonesboro, for appellee.
W.H. "DUB" ARNOLD, Chief Justice.
Appellant Cash In A Flash Check Advance of Arkansas, L.L.C. (hereinafter "CIAFCA"), appeals the order of the Craighead County Circuit Court denying its motions to stay litigation and compel arbitration. Appellee Jimmie Sue Spencer filed a class-action lawsuit against CIAFCA alleging it had violated Arkansas's usury law. For reversal, CIAFCA argues that the trial court erred by not enforcing the language contained in the "Agreement" prepared by CIAFCA signed by appellees which purported to require arbitration of all claims. We disagree, and thus, affirm.
This appeal stems from a dispute regarding the legality of certain transactions involving CIAFCA and appellees. CIAFCA is in business for a twofold purpose: to immediately cash the checks of its customers who desire that service, and to defer presentment to the bank upon which the check is drawn for other of its customer's checks. CIAFCA charges a fee for each of these services and operates pursuant to the provisions of the Arkansas "Check-Casher's Act." Ark.Code Ann. § 23-52-104 (Repl.2000).
Appellee Jimmie Sue Spencer filed a purported class action complaint against CIAFCA. This complaint alleged that CIAFCA was really in the loan business and that the fees it charged for the deferred presentment service were usurious. The complaint arose out of appellee Spencer's transactions with CIAFCA, each of which was memorialized with a written agreement and each of which contained an identical arbitration agreement.
CIAFCA filed a motion to stay litigation and compel arbitration. CIAFCA argued that pursuant to the Arkansas Code, the action must be stayed and sent to arbitration for its resolution. Spencer made her reply to CIAFCA's motion arguing that the agreement was void for usury and the arbitration agreement was otherwise unenforceable on the contract grounds of unconscionability, lack of mutuality, and because it did not comport with the provisions of the Arkansas Arbitration Act.
Spencer, then, filed a motion seeking to certify this action as a class action and a group supplemental exhibit allegedly in support of her position in attacking the arbitration agreement. Spencer amended her complaint to add Dorothy Barnes, Robert Blake, and Yvonne Clark as new defendants and to state an additional cause of action for alleged violation of the Arkansas Deceptive Trade Practices Act. CIAFCA responded to the amendment by filing a second motion to stay litigation and compel arbitration. CIAFCA made the same arguments as its prior argument. A hearing was held on CIAFCA's motion's to stay litigation and compel arbitration. The trial court entered essentially identical orders denying the motions to stay litigation and compel arbitration.
Appellant CIAFCA requests that this Court reverse the decision of the trial court, direct the claimants to arbitration *603 for resolution of this dispute and stay the proceedings pending resolution of the arbitration. CIAFCA asserts four points on appeal: this dispute is subject to arbitration; appellees are not giving up any substantive rights by pursuing their claims in arbitration, as opposed to judicial forums; agreements are legally enforceable contracts; and that the trial court erred in finding the contract unconscionable. We agree with appellee's contentions and hold that the Agreement entered into between CIAFCA and appellee's was not a legally enforceable contract due to lack of mutuality.
At the outset, we note that an order denying a motion to compel arbitration is an immediately appealable order, Ark. R.App. P. Civ. 2(a)(12); E-Z Cash Advance, Inc. v. Harris, 347 Ark. 132, 60 S.W.3d 436 (2001); Showmethemoney Check Cashers, Inc. v. Williams, 342 Ark. 112, 27 S.W.3d 361 (2000); Walton v. Lewis, 337 Ark. 45, 987 S.W.2d 262 (1999). We review a trial court's order denying a motion to compel de novo on the record. Id.
Arbitration Clause
On appeal, CIAFCA argues that both the Arkansas Arbitration Act and the Federal Arbitration Act apply. CIAFCA's written "Agreement," in addition to detailing the amount of the loan and terms of repayment, also contained language which CIAFCA contends constitutes a valid arbitration clause. The subject language in the agreements states:
ARBITRATION: To pursue any claim, demand, dispute or cause of action ("claim") arising under this Agreement or the transaction in connection with which this Agreement has been executed, the claimant must submit to the other party in writing an explanation of the claim and a demand that the claim be resolved by arbitration, provided, that if the claim is against Cash In A Flash Advance of Arkansas, L.L.C., claimant shall mail said notice to D & E Enterprises, 3030 Covington Pike, Suite 181, Memphis, Tennessee 38127. If the other party does not respond to the submittal in writing within ten (10) days of its receipt, the claim must be submitted to binding arbitration in accordance with and pursuant to the laws as enacted in the State of Arkansas at Ark.Code Ann. § 16-108-101 et seq., as may be amended from time to time ("Act"). The arbitration shall be conducted by a single arbitrator selected by agreement between Cash in a Flash Check Advance of Arkansas, L.L.C. or, if no agreement on the arbitrator can be reached, by the Chancery Court of Arkansas sitting in the county where this Agreement was signed. The expenses of the arbitration, including attorney's fees, will be paid in accordance with the award issued by the arbitrator. The finality and binding effect of the arbitration award shall be as set forth in the Act.
GOVERNING LAW: Both this Agreement and the Application were executed at out offices in the State of Arkansas. The Application, the Agreement and this transaction and arrangement with us, shall be governed by and construed and enforced solely in accordance with the internal laws of the State of Arkansas. YOU AGREE THAT THE STATE COURTS LOCATED IN THE STATE OF ARKANSAS WILL HAVE EXCLUSIVE JURISDICTION AND VENUE OF ANY PERMITTED ACTION ARISING UNDER THIS AGREEMENT.
The issue presented in this case is whether this language created a valid and enforceable arbitration agreement under Arkansas law. The Arkansas Uniform Arbitration Act, found at Ark.Code Ann. *604 § 16-108-201 to § 16-108-224, outlines the scope of arbitration agreements in Arkansas. Arkansas Code Annotated section 16-108-201 states:
(a) A written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.
(b) A written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that this subsection shall have no application to personal injury or tort matters, employer-employee disputes, nor to any insured or beneficiary under any insurance policy or annuity contract.
Arkansas Code Annotated section 16-108-202 further states:
Proceedings to compel or stay arbitration.
(a) On application of a party showing an agreement described in XX-XXX-XXX and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.
(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
(c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending a court having jurisdiction to hear applications under subdivision (a) of this section, the application shall be made therein. Otherwise, and subject to XX-XXX-XXX, the application may be made in any court of competent jurisdiction.
(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section, or, if the issue is severable, the stay may be with respect thereto only. When the application is made in the action or proceeding, the order for arbitration shall include the stay.
(e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.
These two statutes, read together, provide that a party in a lawsuit may apply to the trial court to obtain a stay of the proceedings and an order for arbitration pursuant to their agreement. The party resisting arbitration may only dispute the existence or validity of the agreement to arbitrate.
In Arkansas, as a matter of public policy, arbitration is strongly favored and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. Showmethemoney Check Cashers v. Williams, 342 Ark. 112, 27 S.W.3d 361; May Constr. Co. v. Thompson, 341 Ark. 879, 20 S.W.3d 345 (2000); Anthony v. Kaplan, 324 Ark. 52, 918 S.W.2d 174 (1996); Lancaster v. West, 319 Ark. 293, 891 S.W.2d 357 (1995); see also, *605 Estate of Sandefur v. Greenway, 898 S.W.2d 667 (Mo.App. W.D.1995).
The question of whether a dispute should be submitted to arbitration is a matter of contract construction. Showmethemoney, supra; International Union, United Auto., Aerospace, & Agri. Implement Workers of Am. v. General Elec. Co., 714 F.2d 830 (8th Cir.1983). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. May Constr. Co., Inc. v. Benton Sch. Dist. No. 8, 320 Ark. 147, 895 S.W.2d 521 (1995). The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. Foundation Telecommunications v. Moe Studio, 341 Ark. 231, 16 S.W.3d 531 (2000). Therefore, the court should seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself, with doubts and ambiguities being resolved in favor of arbitration. Showmethemoney, supra. The Federal Arbitration Act and the laws of other jurisdictions do not restrict the scope of arbitration as we do in this state. Generally, the scope of arbitration is defined by the contract between the parties. See Anthony, supra. The Act contemplates that the courts will effectuate the agreement.
CIAFCA argues to this Court that the subject matter of this dispute is subject to arbitration. CIAFCA cites to Showmethemoney where this Court held that the question of whether a dispute should be submitted to arbitration is a matter of contract construction with only certain matters being excepted from arbitration. Showmethemoney v. Williams, supra, citing International Union, United Auto., Aerospace & Agri. Implement Workers of Am. v. General Elec. Co., 714 F.2d 830 (8th Cir.1983). The Arkansas Uniform Arbitration Act provides that only certain claims may legitimately be found to be outside the scope of arbitration. Terminix Int'l Co. v. Stabbs, 326 Ark. 239, 930 S.W.2d 345 (1996). Those areas of subject matter expressed to be off limits to arbitration are limited to personal injury tort claims, employment disputes, and insurance policy or annuity contract disputes. Ark.Code Ann. § 16-108-201(b). CIAFCA claims that since this dispute does not fall into one of these areas, the matter is proper for arbitration. CIAFCA goes further and discusses federal law, however this matter is decided under Arkansas law and the Arkansas Uniform Arbitration Act. Further, the CIAFCA arbitration clause specifically states that it is to be governed by the Arkansas Arbitration Act and Arkansas law.
In this case, the trial court properly analyzed the payday loan agreement to determine whether arbitration was appropriate. The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law. E-Z Cash v. Harris, supra.
CIAFCA claims that the Arbitration clause, separately initialed and contained in each appellees agreement with CIAFCA, was contracted for by both appellees and CIAFCA and requires that any claim arising out of the subject transaction be directed to arbitration. Under this clause, CIAFCA argues that neither appellees nor CIAFCA are relinquishing any substantive right or remedy.
CIAFCA contends that in addition to a clear statutory mandate in favor of arbitration and an enforceable arbitration agreement, Arkansas courts have consistently looked upon arbitration with approval as a less expensive, more expeditious means of resolving disputes. May Construction Co. v. Thompson, 341 Ark. 879, 20 S.W.3d 345 (2000). Further, Arkansas courts have consistently held that any doubt as to the *606 scope or reach of the question or arbitrability should be resolved in favor of arbitration. Walton v. Lewis, 337 Ark. 45, 987 S.W.2d 262 (1999).
CIAFCA asserts that although appellee failed to request arbitration, that failure does not negate the parties' bargained for choice of forum. In fact, to submit this dispute to any forum other than the one specifically contemplated by the parties at the time of their entering into the Agreement would be contrary to both the clear mandate of the Arkansas Legislature and Arkansas's judicial precedent. Here, the trial court properly held that the appellees could not receive appropriate relief through arbitration because of the Agreement itself and its lack of mutuality.
Legally Enforceable Contract
The Arkansas legislature has stated that "a written provision to submit to arbitration any controversy thereafter arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable..." Ark.Code Ann. § 16-108-201(b). The Legislature has further mandated "a written agreement to submit any existing controversy to arbitration arising between the parties bound by the terms of the writing is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Ark.Code Ann. § 16-108-202(a).
This Court has addressed the enforceability of arbitration agreements in the context of the check-cashing industry. Showmethemoney Check Cashers, Inc. v. Williams, 342 Ark. 112, 27 S.W.3d 361 (2000); E-Z Cash Advance, Inc. v. Harris, 347 Ark. 132, 60 S.W.3d 436 (2001); Luebbers v. Money Store, 344 Ark. 232, 40 S.W.3d 745 (2001).
In Showmethemoney Check Cashers, Inc. v. Williams, this Court held that arbitration agreements will be enforced the same as any other agreement. The court held that the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement and (5) mutual obligation. Showmethemoney, supra. CIAFCA contends that there can be little doubt that the agreements entered into between them and appellees meet the Williams elements. CIAFCA further asserts that both parties are bound to the agreement by its own terms and may only pursue legal action if the other party does not respond to the arbitration demand within ten days of its receipt. Here, neither party made a written explanation of their claim or demand for arbitration, as required by their agreements, therefore according to CIAFCA neither party is entitled to pursue this matter in a judicial forum.
Specifically, the fact that the check casher had the right to seek redress in a court of law, while the customer was limited strictly to arbitration, demonstrated a lack of mutuality. This court explained:
A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. "... [M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his *607 promise would not be binding on the other.
E-Z Cash Advance, Inc. v. Harris, supra; Showmethemoney, 342 Ark. at 120, 27 S.W.3d at 366. Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. Showmethemoney, supra; Townsend v. Standard Indus., Inc., 235 Ark. 951, 363 S.W.2d 535 (1962). There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. See Showmethemoney, supra.
In this case, the trial court properly ruled that the arbitration agreements at issue in this case are unenforceable. The Agreement employed by CIAFCA allow the appellant at its option to exercise any of the remedies listed in the "Consequences of Default" provision of the Agreement. Within the Agreement, CIAFCA states:
CONSEQUENCES OF DEFAULT: Should you stop payment on the Check or otherwise default under this Agreement, we may, at our option, exercise any one of the following remedies:
(a) if payment is not made after written demand, we may go to court and get a judgment against you for the then unpaid amount of your obligation to us. In the event judgment is entered in our favor, we may seek to collect this judgment through all judicial means necessary, including attaching your non-exempt property, or garnishing your wages:
(b) if we are advised by your bank or other financial institution that the Check was been altered, forged, stolen, obtained through fraudulent or illegal means, negotiated without proper legal authority, or represents the proceeds if illegal activity. If the Check is returned to us by our bank for any of these reasons, we may not release the Check without the consent of the proper authority or other investigating law enforcement authority.
(c) if the check is returned Account Closed and Stop Payment, we may seek any and all criminal charges as prescribed by State Law.
(d) any check returned unpaid by any payer financial institution shall be assessed a return check charge not to exceed $20.00.
(e) if this matter is placed with an attorney for collections of any and all monies dues and owing Cash in a Flash Cash Advance of Arkansas L.L.C. all reasonable costs and expenses of collection, specifically included, but not limited to reasonable attorney fees, court costs, and other damages, as set forth by the court, shall be paid by the customer.
Therefore, the Agreement contains inconsistent language in the "Arbitration" provision and the "Consequences of Default" provision. CIAFCA may, at its option, exercise any one of the remedies listed in the default portion of the Agreement, however the appellees are bound to arbitration. Thus, the Agreement lacks mutuality and cannot stand. We affirm the trial court.
Affirmed.
GLAZE, J., not participating.