ESI GROUP, INC. and Rod Ford *v.*
Denny and Susan BROWN

CA 04-609                                              203 S.W.3d 664

Court of Appeals of Arkansas
Opinion delivered February 16, 2005

8

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *John K. Baker,* for appellants.

*Harrington, Miller, Neihouse & Kieklak, P.A.,* by: *Thomas Kieklak,* for appellees.

R OBERT J. GLADWIN, Judge. Appellants ESI Group, Inc., and Rod Ford appeal from a circuit court's refusal to vacate an arbitration award. We affirm.

On August 18, 1998, ESI purchased the stock of Compass Telecommunications, Inc. ("CTI"), from appellees Denny and Susan Brown. The parties executed a Stock Purchase Agreement in which ESI agreed to pay the Browns $900,000 by wire transfer and $700,000 in a promissory note payable by February 15, 2000. Contemporaneously therewith, the Browns signed a Non-Competition Agreement, for which ESI agreed to pay them $200,000 on or before February 15, 2000. The total consideration for both agreements was therefore $1,800,000. The amounts due under the agreements were secured by ESI's pledge of CTI stock and by the guarantee of ESI's president, Rod Ford.

Within a short time after these transactions occurred, ESI and Ford (hereafter "ESI" collectively) claimed that the Browns had misrepresented the earnings of CTI and that the purchase price of CTI should be adjusted downward. The Browns disagreed, and on November 25, 1998, the parties resolved the dispute by executing a Settlement Agreement, which is the key document for purposes of this appeal. The Settlement Agreement provided, in pertinent part, that an accounting firm would prepare an audited balance sheet and income statement for CTI. If the accountants arrived at a new net-income figure for CTI, then a formula would be used to calculate a price adjustment. The parties agreed, however, that in no event would an adjustment result in a total consideration to the Browns of less than $1,050,000 or more than $1,800,000 – meaning that the Browns, having already received $900,000 from ESI, would receive between $150,000 and $900,000 as a result of the Settlement Agreement, no matter what the auditors determined.

The Settlement Agreement also contained an arbitration clause. It read: "Any dispute, claim or cause of action concerning this Agreement shall be resolved by binding arbitration with John A. Davis, III of ADR, Inc. serving as the sole arbitrator."

The auditors' figures were presented in April 1999, and when the adjustment formula was applied as per the Settlement Agreement, the result was that ESI owed no further payments to the Browns. However, because of the "floor" amount established by the Settlement Agreement, the Browns would be due an additional $150,000 from ESI. The Browns apparently were unsatisfied with that outcome, and on October 27, 1999, they sued ESI in Washington County Circuit Court. In their first count for breach of contract they sought the $700,000 face amount of the promissory note. In their second count for fraudulent inducement, they sought $1,800,000 and alleged that ESI never intended to pay them as promised in the Stock Purchase and Non-Competition Agreements; that ESI had attacked CTI's financial information with the purpose of decreasing the amount payable on the promissory note; and that ESI had "merged [CTI] out of existence in order to make the Browns' security worthless." ESI responded with a counterclaim, alleging that appellee Denny Brown had converted ESI property and violated the Non-Competition Agreement.

On December 15, 2000, ESI filed a motion to compel arbitration of Count I of the Browns' complaint, averring that it concerned a dispute over the price-adjustment formula set out in the Settlement Agreement and was therefore arbitrable. On January 9, 2001, the court referred Count I to arbitration. The parties' remaining circuit-court claims were voluntarily nonsuited.

On July 24, 2002, the first hearing was held before the arbitrator, and the issue of the scope of arbitration was raised. ESI contended that arbitration was limited to Count I of the Browns' lawsuit. The Browns argued that arbitration covered "any issue relating to the Settlement Agreement." The arbitrator concluded that, while the trial court had only referred Count I of the complaint to arbitration, the Settlement Agreement provided that any dispute, claim, or cause of action concerning the Settlement Agreement could be resolved by arbitration. Thus, he ruled, any dispute relating to the Settlement Agreement would be deemed arbitrable.

On or about August 7, 2002, the Browns submitted their complaint to the arbitrator, alleging that 1) ESI had destroyed the

Browns' collateral by violating those parts of the Stock Purchase Agreement that assured the continued, separate existence of CTI; 2) the audit conducted pursuant to the Settlement Agreement was flawed because it excluded consideration of certain invoices and, had those invoices been considered, the audit would have shown that ESI owed the Browns $900,000; and 3) they had incurred $17,686.28 in expenses as the result of ESI's breach. ESI answered that the Browns' claim for incidental expenses was not arbitrable, and counterclaimed that the Browns had violated the Non-Competition Agreement and converted ESI's property. The counterclaim sought monetary damages for the conversion and prayed for a declaration that any performance that ESI might owe under the Non-Competition Agreement was excused due to the Browns' breach.

The final arbitration hearing was held on July 13, 2003, and the arbitrator's award was issued on October 22, 2003. He found that the audit correctly concluded that ESI owed no further payments to the Browns and that, because the Settlement Agreement established a floor recovery of $150,000, ESI was indebted to the Browns for that amount. He also denied the Browns' claim for incidental expenses and determined that, if the Browns breached the Non-Competition Agreement, the breach was not material and, therefore, ESI's counterclaim seeking to offset any amount it owed the Browns would be denied. ESI moved for reconsideration and continued to object to the arbitrator resolving any matter other than what was set forth in Count I of the Browns' circuit-court complaint. The arbitrator issued a supplemental award for the purpose of recalculating an award of interest, but gave ESI no further relief.

On January 20, 2004, ESI returned to circuit court and filed a motion to vacate the arbitrator's award on the grounds that it exceeded the scope of arbitration. On February 13, 2004, the trial court denied the motion, and ESI now appeals from that order.[1]

In arbitration cases, the scope of review is very narrow, limited to vacating an award only upon statutory grounds or the finding that the award violates a strong public policy. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001); *see also* Ark.

---

[1] This appeal is taken from an order refusing to vacate an arbitration award. As such, it is tantamount to an order confirming an arbitration award and is therefore appealable. *See* Ark. R. App. P.–Civil 2(a)(12) (2004); Ark. Code Ann. § 16-108-219(a)(3) (1987).

Code Ann. § 16-108-212(a) (Supp. 2003) (stating grounds for vacating an award). Whenever possible, a court must construe an arbitration award so as to uphold its validity. *200 Garrison Assocs. Ltd. P'ship v. Crawford Constr. Co.*, 53 Ark. App. 7, 918 S.W.2d 195 (1996). An award should not be vacated unless it clearly appears that it was made without authority or was the result of fraud, mistake, misfeasance, or malfeasance. *Id.*

■ ESI argues that the arbitrator exceeded his authority because he adjudicated the issue of the breach of the Non-Competition Agreement. However, as the arbitrator found, both the Browns and ESI injected matters concerning the Non-Competition Agreement into the arbitration proceeding, thus placing it within the scope of arbitrable issues. It was in fact ESI who affirmatively sought a ruling that the Browns had violated the Non-Competition Agreement. Moreover, the arbitrator's only express ruling with regard to the Non-Competition Agreement was made as the result of ESI's counterclaim. ESI therefore cannot complain of an alleged error for which it is responsible. *See Jones Rigging & Heavy Hauling, Inc. v. Parker*, 347 Ark. 628, 66 S.W.3d 599 (2002).

In any event, we agree with the trial court's decision not to vacate the arbitration award. We first observe that ESI appears to have abandoned the argument that it primarily pursued below, *i.e.*, that arbitration should have been limited to Count I of the Browns' complaint. Instead, ESI argues on appeal (as it also did below, albeit less relentlessly) that the arbitrator's award exceeded the scope of the Settlement Agreement's arbitration clause. We therefore discuss the issue as it has been presented by ESI.

■ Arbitration is a matter of contract between parties. *E-Z Cash Advance v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001); *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). The question of whether a dispute should be submitted to arbitration is therefore a matter of contract construction. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004). The courts seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *See E-Z Cash Advance v. Harris, supra: A.G. Edwards & Sons, Inc. v. Myrick*, 88 Ark. App. 125, 195 S.W.3d 388 (2004). An arbitration agreement will not, however, be construed within the strict letter of the agreement but will include subjects within the spirit of the agreement. *Tyson Foods, Inc. v.*

*Archer, supra; E-Z Cash Advance v. Harris, supra.* Doubts and ambiguities regarding the parties' intent or the scope of arbitrable issues will be resolved in favor of arbitration. *See Cash In A Flash Check Advance of Ark. v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002); *Neosho Constr. Co. v. Weaver-Bailey Contractors*, 69 Ark. App. 137, 10 S.W.3d 463 (2000).

As best we can discern, ESI contends that the arbitrator, by awarding $150,000 to the Browns, effectively compensated them for ESI's breach of (that is, failure to pay for) the Non-Competition Agreement. This argument is apparently based on the idea that, because the auditors determined that ESI owed the Browns nothing further for the CTI stock, any monetary award to the Browns must have been for money owed under the Non-Competition Agreement.

Even if the $150,000 award can be so characterized, we believe that the award "concerned" the Settlement Agreement and was therefore the proper subject of arbitration; certainly it was within "the spirit" of the arbitration agreement. *See E-Z Cash Advance v. Harris, supra.* The Settlement Agreement recited that a dispute had arisen between the parties that could result in an adjustment of the "aggregate consideration or purchase price of $1,800,000," which included the $200,000 for the Non-Competition Agreement. Further, the Settlement Agreement ensured that, after the auditor's adjustment, the Browns could receive total consideration of up to $1,800,000, again the aggregate amount of all contracts. Finally, it is apparent that, in the absence of the Settlement Agreement, there would have been no basis for the Browns' recovery of $150,000; it was only because the Settlement Agreement established that "floor" amount that it was awarded. Thus, the arbitrator's award was made as a direct result of the disputes that the parties agreed to resolve via the Settlement Agreement.

■ Based on the foregoing, we affirm the trial court's refusal to vacate the arbitration award.

PITTMAN, C.J., and VAUGHT, J., agree.