THE MONEY PLACE, LLC *v.* Dorothy BARNES,
Individually and o/b/o a Class of Similarly Situated Persons

01-1361                                                    78 S.W.3d 714

Supreme Court of Arkansas
Opinion delivered June 20, 2002

*Mixon, Parker & Hurst, PLC,* by: *Donald L. Parker, II,* and *Harry S. Hurst, Jr.,* for appellant.

*Morgan & Turner,* by: *Todd Turner;* and *Orr, Scholtens, Willhite & Averitt, PLC,* for appellee.

JIM HANNAH, Justice. Appellant The Money Place, LLC, appeals a Craighead County Circuit Court order denying The Money Place's Motion to Compel Arbitration and Stay Litigation. Dorothy Barnes filed a class-action lawsuit against The

Money Place alleging usury in its payday-loan/deferred-check presentment business. The Money Place argues that its Deferred Presentment Agreement signed by Barnes requires that all claims by Barnes be arbitrated pursuant to the Federal Arbitration Act. Validity of the arbitration provision must be determined first. The arbitration provision lacks mutuality and is not valid. Because we hold that the arbitration provision is not enforceable, the issue of unconscionability need not be addressed. The circuit court is affirmed.

*Facts*

In the fall of 2000, Barnes alleges that she began obtaining loans from The Money Place by presenting them a check in the amount of $344.44, for which she received $300 in cash in return. The interest or fee of $44.44 allowed her to keep the $300 for two weeks, at which time she had to pay $344.44. She then commenced anew, again presenting a check for $344.44, which they again agreed to hold for two weeks. Barnes continued to present new checks until January 2001. She alleges that the interest rate on the loans provided by The Money Place vary between 300 percent to 730 percent per annum.

On January 26, 2001, Barnes filed a class-action lawsuit against The Money Place alleging the loans by The Money Place violated the usury laws as provided in Article 19, Section 13 of the Arkansas Constitution and Ark. Code Ann. §§ 4-57-101—4-57-108 (Repl. 2001). On March 20, 2001, The Money Place filed a Motion to Compel Arbitration and Stay Proceedings based upon alleged valid and binding arbitration clauses in the Deferred Presentment Agreement. Barnes countered arguing that the agreement was void and that the arbitration clause was unenforceable and unconscionable. The trial court agreed with Barnes, and The Money Place appeals.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.—Civ. 2(a)(12); *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001); *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark.

112, 27 S.W.3d 361 (2000). We review a trial court's order denying a motion to compel arbitration *de novo* on the record. *Id.*

### Federal Arbitration Act and Mutuality

The Money Place argues that the Federal Arbitration Act (FAA) preempts state law and prohibits state courts from applying state statutes that invalidate arbitration agreements. The Money Place cites *Allied-Bruce Terminax Cos. v. Dobson*, 513 U.S. 265 (1995), wherein, The Money Place argues, the United States Supreme Court reversed a decision of the Alabama Supreme Court applying an Alabama "anti-arbitration statute."

The same argument was made in *E-Z Cash*. The arbitration provision in the contract at issue in the instant case is virtually identical to the provision we found invalid in *E-Z Cash*. We reach the same conclusion today as we did last December:

> In *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), the United States Supreme Court held that application of the FAA may be avoided where the parties agree to arbitrate in accordance with state law. Accordingly, Arkansas law, including the Arkansas Uniform Arbitration Act, governs the issue at hand.

*Id.* at 136, 60 S.W.3d at 439. As stated in The Money Place's reply brief at page 4, "The application of the FAA and Arkansas arbitral law are not at odds here—The FAA mandates that the general principles of Arkansas law be applied. . . ." We hold that Arkansas law applies.

However, before we may consider how the arbitration clause might be enforced under the FAA or otherwise, we must determine whether there is an arbitration clause that may be enforced. The threshold issue then is whether there is a valid arbitration clause to enforce. *Showmethemoney, supra; E-Z Cash in Advance, supra. See also, Cash in a Flash Advance of Arkansas, LLC. v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). That analysis is made under state law. *Showmethemoney, supra.; E-Z Cash Advance, supra.*

As in *Showmethemoney, supra*, the preliminary issue is whether the language of the subject arbitration provision consti-

tutes a valid contract to arbitrate. The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Cash in a Flash, supra; Showmethemoney, supra; Foundation Telecommunications v. Moe Studio,* 341 Ark. 231, 16 S.W.3d 531 (2000). As *The Money Place* recognizes, and as the previous cases on similar arbitration provisions such as the one before us have stated, of particular importance to this case is the element of mutuality of obligations. *Showmethemoney, supra; E-Z Cash Advance, supra.* Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Showmethemoney, supra; Townsend v. Standard Indus., Inc.,* 235 Ark. 951, 363 S.W.2d 535 (1963).

The Money Place argues that mutuality is required, but only as to the agreement as a whole. The Money Place argues that in this case the arbitration clause is not a separate agreement, but rather simply part of the whole agreement, and that mutuality must be analyzed as to the whole agreement, not just as to the terms of the arbitration provision. Contrary to The Money Place's argument, mutuality within the arbitration agreement itself is required, and that analysis depends on Arkansas contract law. *Showmethemoney, supra.* The Money Place argues that mutuality is not required specifically for the arbitration provision if the entire agreement is supported by sufficient consideration. The Money Place's consideration for the contract in taking the check is to provide the customer immediately with cash in an amount that is less than stated on the check and to postpone presenting the check for payment until a later date. The customer's consideration is to pay the fees specified in the contract. (The fees are included in the amount of the check.) If the fees are, in reality, interest, and are usurious, then the contract lacks consideration. To analyze the contract as the Money Place argues would require this court to go to the merits of the underlying case rather than consider only whether arbitration can be compelled under the contract. As The

Money Place correctly points out in its reply brief, when the issue is whether or not to compel arbitration, the federal courts do not consider the merits of the underlying contract as a whole, rather the inquiry is limited to the arbitration provision. *See Prima Paint, Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). We follow the lead of the United States Supreme Court and decline to address the issue of whether there is sufficient consideration for the contract as a whole. We limit our inquiry to whether the arbitration provision of the contract specifying the method and forum for resolution of disputes is valid. As stated in this court's opinion in *Showmethemoney*, Arkansas precedent on mutuality requires that the terms of the agreement must fix a real liability upon the parties. *Showmethemoney, supra; E-Z Cash Advance, supra; Townsend, supra.*

■ The following provisions of the Deferred Presentment Agreement are relevant to the issue before us:

> **RETURNED CHECK CHARGE AND COLLECTION COSTS.** If the check is returned to us from your financial institution due to insufficient funds, closed account, or a stop payment order, we have the right to all civil remedies allowed by law to collect the Check and shall be entitled to a returned check fee of $20.00, court costs and reasonable attorney fees pursuant to Act 1216 of 1999 § 6(g).

> **WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT.** Arbitration is a process in which persons with a dispute: (a) waive their rights to a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Because the parties to the dispute select the arbitrator, they are responsible for paying the arbitrator. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be permitted. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a decision resolving the dispute. The arbitrator's decision is final and binding upon the parties, and may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Agreement, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation, (a) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Applicant/Personal Information Form (the Application), this Agreement (including this arbitration provision and the fees charges), or any prior agreement or agreements between you and us; (b) all counterclaims, cross-claims and third-party claims; (c) all common law claims, based upon contract, tort, fraud and other intentional torts; (d) all claims based upon a violation of any state or federal constitution, statute or regulation; (e) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (f) all claims asserted by you individually, as a private attorney general, as a representative and/or member of a class of persons, or in any other representative capacity, against us and/or any of our employees, agents, officers, shareholders, or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief.

2. Except as provided in Paragraph 4 below, all disputes, including the validity of this arbitration provision shall be resolved by binding arbitration. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879), J.A.M.S./Endispute (1-800-352-5267), or National Arbitration Forum (1-800-474-2371). However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If we or a related third party demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a localarbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the

rules and procedures of such arbitration applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this agreement, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization at the toll free number listed above.

. . . .

4.   **ALL PARTIES, INCLUDING RELATED THIRD PARTIES, SHALL RETAIN THE RIGHT TO SEEK ADJUDICATION IN A SMALL CLAIMS TRIBUNAL FOR DISPUTES WITHIN THE SCOPE OF SUCH TRIBUNAL'S JURISDICTION.** Any dispute which cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by the binding arbitration set out in this Agreement. Any appeal of a judgement from a small claims tribunal *shall* be resolved by binding arbitration.

The language in this arbitration provision is very similar to the provision in *E-Z Cash Advance, supra*. In this case, however, The Money Place argues that this court misread the above terms in the *E-Z Cash Advance* case because this court failed to recognize that under the terms of the arbitration agreement, The Money Place was required to arbitrate and/or take its collection claims to small claims court. This argument is based upon the principle that the court should not give effect to one contract provision to the exclusion of others, citing *RAD-Razorback, Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). This same argument was rejected in *E-Z Cash Advance, supra*. This court stated that the argument was disingenuous in light of the preceding provision governing collection of debts. Under that provision, The Money Place has the right to pursue all civil remedies when a check is returned. As in *E-Z Cash Advance, supra*, The Money Place may sue to collect and recover amounts, including fees, attorney fees, and court costs. As we said in *E-Z Cash Advance*, 347 Ark. at 140:

> Taking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that E-Z Cash would be required to submit to arbitration. Harris and other borrowers, however, do not have the same ability to seek relief in the court system. Thus, the agreement to arbitrate is not

supported by sufficient consideration, because Harris is the only party that has promised to forego her rights to seek redress in the court system. As previously stated, Harris's promise to submit to arbitration is not enforceable, because E-Z Cash has the option of pursuing arbitration or bringing suit in court. Because this arbitration agreement lacks the element of mutuality, it is not a valid and enforceable agreement. Accordingly, the trial court did not err in denying E-Z Cash's motion to compel arbitration.

We reach the same conclusion in this case. Because there is no mutuality, the arbitration provision is not valid and is not subject to enforcement under any arbitration act.

We note that The Money Place argues that Barnes is not precluded from vindicating her rights in a judicial forum because under the terms of the agreement, she may bring suit in small claims court. However, even if it is possible for Barnes to resort to small claims court, that right is still controlled by arbitration because according to the agreement, any dispute about the outcome in small claims court must be arbitrated. There is no appeal to the circuit court or to the appellate courts. Thus, this argument is illusory. This does not alter our holding that the arbitration provision is not enforceable due to a lack of mutuality. Because we hold the arbitration provision unenforceable based upon a lack of mutuality, there is no need to discuss the issue of whether the arbitration agreement is unconscionable or void because the underlying contract might be illegal and void.

Affirmed.

GLAZE, J., not participating.