ASBURY AUTOMOTIVE USED CAR CENTER, L.L.C. *v.*
Patrick BROSH, Mark Lunsford, Mel Anderson, NCAS, L.L.C.
and New Century Auto Sales Corporation

05-290                                                      220 S.W.3d 637

Supreme Court of Arkansas
Opinion delivered December 15, 2005

*Warner, Smith & Harris, PLC,* by: *G. Alan Wooten* and *J. Steven Bell,* for appellant.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Robert K. Rhoads, T. Lane Wilson,* and *Karissa K. Cottom,* for appellees.

TOM GLAZE, Justice. This is an interlocutory appeal from an order of the trial court denying a motion filed by appellant Asbury Automotive Used Car Center ("Asbury") to compel arbitration. In the mid-1990s, appellees Patric Brosh, Mark Lunsford, and Mel Anderson developed a concept of selling used cars from Wal-Mart parking lots. Brosh, Lunsford, and Anderson's company, appellee New Century Auto Sales Corporation ("New Century"), entered into a lease agreement with Wal-Mart whereby New Century leased property on Wal-Mart parking lots from which to sell used cars. New Century eventually developed a business plan or model for this leasing and selling arrangement. Subsequently, New Century decided to market that business plan to used car dealers. Brosh approached Asbury with the business plan, and Asbury responded favorably.

In early 2002, New Century and Asbury executed a series of agreements. Under the "Purchase Agreement," Asbury agreed to purchase the business model from New Century,[1] and to enter into a new lease with Wal-Mart in order to begin selling used cars from Wal-Mart parking lots. In addition to the Purchase Agreement, Brosh, Lunsford, and Anderson each entered into "Employment Agreements" with Asbury; under the Employment Agreements, Asbury was to pay Brosh, Lunsford, and Anderson an annual base salary of $300,000.00. The Employment Agreements also contained a termination provision, under which Asbury would be obligated, in the event it terminated its leases with Wal-Mart, to provide additional compensation to Brosh and the others.

The parties' business relationship eventually soured, and Asbury terminated its leases with Wal-Mart, and also terminated Brosh, Lunsford, and Anderson in August of 2003. As a result, plaintiffs Brosh, Lunsford, Anderson, and New Century filed a complaint in Washington County Circuit Court on February 17, 2004, alleging that Asbury had breached both the Purchase Agreement and the Employment Agreement, and sought damages in excess of $23,000,000.00.

---

[1] The business model was actually purchased from NCAS, a limited liability company formed by New Century in January of 2002, to which New Century assigned the lease and business model.

On March 25, 2004, defendant Asbury answered and filed a motion for stay of proceedings and to compel arbitration. In this motion, Asbury noted that both the Purchase Agreement and Employment Agreements contained a clause under which any disputes arising from the agreements "shall be submitted to arbitration[.]" In accordance with Ark. Code Ann. § 16-108-202(a) (1987),[2] Asbury asked the circuit court to order the parties to proceed with arbitration. The plaintiffs responded, asserting that the arbitration clauses lacked mutuality of obligation and were therefore unenforceable. The trial court held a hearing on the matter on June 1, 2004, and subsequently determined that the arbitration agreement lacked mutuality of obligation. Accordingly, the trial court denied Asbury's motion to compel arbitration on November 30, 2004.

A trial court's order denying a motion to compel arbitration is immediately appealable under Ark. R. App. P. – Civ. 2(a)(12). This court reviews such an order *de novo* on the record. *See Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 157 S.W.3d 681 (2004); *The Money Place, LLC v. Barnes*, 349 Ark 411, 78 S.W.3d 714 (2002). The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Tyson Foods*, 349 Ark. at 141; *see also E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001).

The arbitration clauses at issue in this case are found in the parties' Purchase Agreement and in their Employment Agreement. The arbitration clause in the Purchase Agreement reads as follows:

12. ALTERNATIVE DISPUTE RESOLUTION. In the event of any controversy arising out of or relating to this Agreement or any breach thereof, the parties shall first use their diligent and good faith efforts to resolve the dispute by exchanging relevant information and negotiating in good faith. If such dispute resolution efforts are unsuccessful after 30 days, the parties to this Agreement agree to participate in non-binding mediation in accordance with the Commercial Mediation Rules of the American Arbitration

[2] Section 16-108-202(a) provides, in pertinent part, that "[o]n application of a party showing an agreement described in § 16-108-201 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration[.]" Ark. Code Ann. § 16-108-201 (Supp. 2005), in turn, provides generally that written agreements to submit controversies to arbitration are "valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract."

Association. . . . If the mediation is unsuccessful after 45 days from the date the mediation proceedings are commenced, the dispute shall be submitted to binding arbitration in accordance with the rules of the Commercial Arbitration Rules of the American Arbitration Association. . . . Notwithstanding the foregoing language, the parties acknowledge and agree that neither party shall be bound by the terms of this Paragraph 12 if such party seeks any relief against any other party pursuant to Paragraph 9(f)(2) above.

In turn, Paragraph 9(f)(2) provides, in relevant part, as follows:

(f) Non-Competition; Non-Solicitation

. . . .

(2) Each of [NCAS], [New Century], and [Brosh, Lunsford, and Anderson] acknowledge that the restrictions contained in Paragraphs 9(c) and 9(f)(1),[3] including the geographical restriction set forth in Paragraph 9(f)(1)(A) above, are reasonable and necessary to protect the legitimate interests of [Asbury], and that any violation of Paragraphs 9(c) and 9(f)(1) will result in irreparable injury to [Asbury] for which money damages would not provide an adequate remedy. Therefore, [Asbury] shall (notwithstanding any arbitration or mediation provision set forth in this Agreement) be entitled to preliminary and permanent injunctive relief in any court of competent jurisdiction and to an equitable accounting of all earnings, profits, and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which [Asbury] may be entitled. . . . In addition to any other remedies which [Asbury] may have at law, in equity, or under this Agreement, in the event of a breach of the restrictions set forth in Paragraphs 9(c) or 9(f), [Asbury] shall be entitled to withhold any amounts due or owing to [NCAS], [New Century], or [Brosh, Lunsford, and Anderson], as applicable, hereunder or otherwise, and the withholding of such amounts shall not constitute liquidated damages for any such breach.

The Employment Agreements contain similar language. Paragraph 10, governing settlement of disputes, provides the following:

---

[3] Paragraph 9(c) governs confidentiality agreements; Paragraph 9(f)(1) contains the non-competition and non-solicitation provisions.

Except as provided in Paragraph 9(d) above, any dispute regarding the interpretation of this Agreement or relating to the Executive[s'[4]] employment shall be resolved by binding arbitration . . . in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association then in effect.

Paragraph 9(d), in turn, reads as follows:

### 9. Non-solicitation; Non-competition; Trade Secrets, Etc.

. . . .

(d) Executive[s] acknowledge[ ] that the restrictions contained in Paragraphs 8, 9(a), 9(b), and 9(c) . . . are reasonable and necessary in order to protect the legitimate interests of [Asbury], and Executive[s] therefore acknowledge[ ] that, in the event of [their] violation of any of these restrictions, [Asbury] shall be entitled (notwithstanding any arbitration or mediation provisions set forth in this Agreement) to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as well as damages and an equitable accounting of all earnings, profits and other benefits arising from such violation, which rights shall be cumulative and in addition to any other rights or remedies to which [Asbury] may be entitled.

Brosh and the other plaintiffs argued below, and the trial court agreed, that these provisions evidenced a lack of mutuality of obligations, which rendered the arbitration agreement unenforceable. This court has had several opportunities in recent years to discuss the concept of mutuality of obligation. Most recently, in *Tyson Foods v. Archer, supra,* this court noted that the essential elements of a contract, including a contract to arbitrate, are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Tyson Foods,* 356 Ark. at 141–42. In the instant case, as in *Tyson Foods,* the only element at issue is that of mutual obligations.

This court has recognized that mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *Id.* at 142; *see also Barnes,* 349 Ark. at 414. A contract that leaves it entirely

---

[4] "Executives" refers to Brosh, Lunsford, and Anderson.

optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Barnes*, 349 Ark. at 414. Mutual promises that constitute consideration for each other are the classic method of satisfying the doctrine of mutuality. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 120, 27 S.W.3d 361, 366 (2000). Mutuality within the arbitration agreement itself is required. *Barnes*, 349 Ark. at 414. There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Cash in a Flash Check Advance of Arkansas v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002); *Showmethemoney Check Cashers*, 342 Ark. at 121; *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. at 139. A lack of mutuality to arbitrate in arbitration clauses renders the clauses void as to the bound party. *Showmethemoney Check Cashers*, 342 Ark. at 120.

In the "check-cashing" cases, this court consistently held that, where one party retains to itself the right to seek judicial relief, while the other party is strictly limited to arbitration, there is no mutuality of obligations, and the arbitration provisions are unenforceable. For example, in *Showmethemoney Check Cashers*, *supra*, the check-cashing company reserved to itself the right to institute legal action to collect any amounts due to it, but required customers to arbitrate any disputes they might have. Likewise, in *Cash in a Flash, supra*, the check casher reserved the right to "go to court and get a judgment" against the customer, or even to seek criminal charges against the customer, but limited the customer to pursuing any claim against Cash in a Flash through arbitration.

In a recent arbitration case that did not involve a check-cashing company, this court found mutuality of obligation to be lacking. *Tyson Foods*, 356 Ark. at 146. That case involved a contract between Tyson Foods and a group of hog farmers. There, language in the contract's arbitration clause directed that "any dispute or controversy between the parties hereto arising out of or relating to this contract . . . shall be submitted to arbitration[.]" *Id.* at 142–43. However, prior to that arbitration clause was a provision detailing Tyson Foods' remedies in the event that a hog farmer defaulted on the contract. That provision provided as follows:

> 11. Remedies of Company on Default of Producer. Upon default of breach of any of the Producer's obligations under this Contract the Company may immediately cancel this Contract by giving notice in writing, and the Company may, without further notice, delay or legal process, take possession of swine, feed or other property owned by the Company. The Company shall have the

> right to utilize the Producer's swine facilities until the swine reaches marketable weight. The Company may also pursue any other remedies at law or equity.

*Id.* at 143. This court held that, because this provision gave Tyson Foods the sole right to pursue legal or equitable remedies, while the farmers were limited to pursuing any grievance in the forum of arbitration, the arbitration agreement lacked mutuality and was therefore unenforceable.

In the present appeal, Asbury argues that there are mutual obligations under the arbitration provisions of the Purchase and Employment Agreements. It asserts that all parties are required to arbitrate any dispute arising out of the contract in which the arbitration provisions arise, except for the availability of injunctive relief in two instances. Asbury further contends that, in the event a party seeks judicial relief, the arbitration provisions do not apply to the other party. It asserts that the parties have agreed to arbitrate, but for certain limited instances, and such an exception to arbitration for both parties should not result in a lack of mutuality. Asbury further claims that Paragraph 12 specifically allows either party to not be bound by the arbitration agreement under the non-competition or non-solicitation provisions. Thus, it argues, paragraph 12 allows either party to seek judicial remedies in limited circumstances.

It is true that Paragraph 12 of the Purchase Agreement provides that "neither party shall be bound by the terms of this Paragraph 12 if such party seeks any relief against any other party pursuant to Paragraph 9(f)(2) above." Asbury argues that this means that both parties are entitled to seek judicial relief. However, Arkansas law requires that different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is possible; giving effect to one clause to the exclusion of another on the same subject is erroneous. *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971). Paragraph 12 must be read in conjunction with Paragraph 9(f)(2), and reading these two paragraphs together compels a conclusion that these two clauses of the contract cannot be harmonized.[5]

As just noted, under Paragraph 12, if "a party" seeks relief under Paragraph 9(f)(2), then neither party is bound to

---

[5] The parallel paragraphs in the Employment Agreement — Paragraphs 10 and 9(d) — are worded similarly.

arbitrate. However, upon reading of Paragraph 9(f)(2), it is apparent that the only party who may seek relief under that paragraph is Asbury. Paragraph 9(f)(2) provides that, in the event of a breach of the non-competition and non-solicitation agreement, "*Buyer [Asbury]* shall (notwithstanding any arbitration or mediation provision set forth in this Agreement) be entitled to preliminary and permanent injunctive relief." (Emphasis added.) No similar rights are extended to Brosh, Lunsford, Anderson, or New Century. Thus, it is clear that Asbury has reserved to itself the right to pursue non-arbitration remedies, while limiting the other parties solely to arbitration. Under the plain language of Paragraph 9(f)(2), only the Buyer — Asbury — has the right to instigate and pursue legal or equitable relief outside of arbitration. Brosh and the other plaintiffs can never institute legal or equitable actions themselves; they are limited to pursuing arbitration only. Accordingly, as in *Tyson Foods*, 356 Ark. at 144, the provisions are inconsistent and cannot be harmonized; the arbitration agreement lacks mutuality, and we therefore affirm the trial court's order denying Asbury's motion to compel arbitration.