2012 Ark. 17

**INDEPENDENCE COUNTY,**
**Arkansas, Appellant**

v.

**CITY OF CLARKSVILLE,**
**Arkansas, Appellee.**

**No. 11–268.**

Supreme Court of Arkansas.

Jan. 19, 2012.

Allen Law Firm, by: H. William Allen; and Williams & Anderson, PLC, by: David M. Powell and Andrew King, Little Rock, for appellant.

Bruce Wilson, Clarksville; and Zachary David Wilson, P.A., by: Zachary D. Wilson, North Little Rock, for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Independence County, Arkansas, appeals the order entered by the Johnson County Circuit Court denying its motion to compel arbitration of a contract dispute with appellee City of Clarksville, Arkansas. For reversal, appellant challenges the circuit court's ruling that the arbitration agreement was unenforceable because appellee properly exercised its right to terminate the parties' entire contract. Appellant also asserts that the circuit court erred by declaring the arbitra-

tion provisions of the contract void for lack of mutuality. We affirm.

The record discloses that in June 2005 the parties entered into an Amended and Restated White River Hydroelectric Project Power Purchase and Sale Agreement (PPA), wherein appellant agreed to supply, and appellee pledged to purchase, "all power made available by [appellant] according to the rates and conditions" set forth in a formula contained in an attachment to the contract. The electrical power was to be generated by a hydroelectric plant that appellant owned and that utilized a series of locks and dams located on the White |₂River. Appellant financed the project by issuing tax-exempt bonds that were to be retired with the funds remitted by appellee for its purchase of electricity. As pertinent here, the PPA provided as follows:

4.1 This agreement shall become effective on that date which is the date of commercial operation of the Plant, as determined by the [appellant], which determination shall be final and conclusive, and shall automatically expire at the end of the FERC [1] license term for Lock and Dam No. 3 (January 31, 2036), unless extended by agreement.

The [appellee] may terminate this Agreement if the Plant has not commenced commercial operation on or before 22 months (not including any delays caused by a force majeure event) after the date hereof, upon sixty days' written notice to the [appellant].

The PPA also included provisions regarding arbitration. The agreement provided in part as follows:

1. Hydroelectric projects are authorized through the Federal Energy Regulatory Com-

4.3 *Arbitration Mandatory.* Except as may be required by federal, state or local law, all claims, disputes and other matters in question arising out of, or relating to, this Agreement shall be submitted to arbitration. Arbitration may be initiated by either [appellant] or the [appellee] by making a written demand for arbitration upon the other party.

In addition, the PPA set forth a procedure for the selection of a panel of three arbitrators and stated that arbitration proceedings were to be conducted in compliance with the Arkansas Uniform Arbitration Act. The arbitration agreement within the PPA also contained the following limitations:

*Limitation of Powers.* The arbitration panel shall have no authority to add to, delete or alter any provisions of this Agreement but shall limit its interpretation to the express terms of this Agreement. Under no circumstances shall an |₃arbitration panel be vested with authority or jurisdiction to determine or add monetary damages (by way of set-off, counterclaim, directly or otherwise) or any other legal relief against the [appellee] or its officers, agents, or employees.

In August 2005, the parties executed an Acknowledgment and Consent Agreement. In relevant part, paragraph 9 of the Consent Agreement, entitled "Additional Provisions," stated that

(d) the "date of commercial operation" for the Projects shall be the date on which the Projects are substantially complete and capable of producing 70,527 MWH of electric energy per year (regardless of water flow)[.]

mission.

Appellant began supplying appellee electricity in September 2006. However, the project experienced operational and financial difficulties, and in 2008, the parties executed a Memorandum of Understanding that increased the rate appellee paid for the power supplied by appellant. The Memorandum of Understanding expired in April 2010.

On August 4, 2010, appellee's mayor, Mayor Billy Helms, wrote a letter to appellant's county judge, Judge Bill Hicks, advising that appellee was invoking the termination provision found in the second paragraph of section 4.1 of the PPA, effective November 1, 2010. On August 19, 2010, appellant's counsel responded to Mayor Helms's letter. In this correspondence, counsel denied that appellee had grounds to terminate the PPA and demanded arbitration. In a letter dated September 2, 2010, appellee's attorney replied that the dispute was not arbitrable and rejected the demand for arbitration.

On September 14, 2010, appellant filed a motion to compel arbitration in the Circuit Court of Johnson County, asking the court to order arbitration in accordance with the terms of the PPA. In response, appellee argued that the hydroelectric facilities were a "failed project" and that it had validly exercised its contractual right to terminate the PPA because the hydroelectric plant had not achieved commercial operation under the terms of the PPA and Consent Agreement. Appellee maintained that, because it had revoked the PPA in its entirety, the arbitration provisions were also extinguished, such that it no longer had an obligation to submit to arbitration. Appellee also asserted that the arbitration agreement contained within the PPA lacked mutuality of obligation in light of the arbitration panel's lack of jurisdiction and authority to award monetary damages against it. Further, appellee asserted that appellant was not the real party in interest; that appellant had not received authorization to institute the action; and that the arbitration provisions of the PPA were ambiguous and should be construed against appellant as the drafter of the PPA.

The circuit court conducted hearings on October 28, 2010, and December 1, 2010. Over appellant's objection, the circuit court permitted appellee to offer testimony in support of its claim that it was entitled to terminate the PPA because the plant did not commence commercial operation. On December 6, 2010, the circuit court entered an order denying the motion to compel arbitration, ruling that the arbitration agreement was not enforceable on two grounds. First, the court found that the plant failed to achieve commercial operation by not meeting the benchmark of annually producing 70,527 MWH of electricity. The circuit court thus concluded that appellee validly exercised its right to terminate the PPA and that, with the revocation of the entire agreement, appellee was released from the obligation to arbitrate. Second, the circuit court found that the arbitration agreement lacked mutuality of obligation because the arbitration panel did not have the authority or jurisdiction to award monetary damages or any other legal relief against appellee. Appellant brings this appeal from the circuit court's order.

In its first two issues on appeal, appellant challenges that portion of the circuit court's order in which the court ruled that appellee properly invoked its right under the PPA to terminate the contract, thereby extinguishing its duty to arbitrate disputes. Appellant contends that, under both Arkansas and federal law, the circuit court overstepped the bounds of its authority by determining the validity of the entire contract, as that was a matter for the arbitration panel to decide. As its

third point, appellant argues that the circuit court erred in finding that the arbitration agreement lacked mutuality of obligation. We hold that the circuit court did not err in ruling that the arbitration agreement was unenforceable due to the absence of mutuality of obligation. Because the arbitration agreement is void on this basis, we need not discuss the circuit court's alternative ruling that appellee's valid exercise of its contractual right to terminate the PPA released appellee from the obligation of submitting to arbitration.

On the question of mutuality of obligation, appellant asserts that the arbitration provisions impose an obligation on both parties to submit contract disputes to arbitration and that neither party is attempting to shield itself from litigation while reserving its own ability to pursue relief through the court system. Appellant contends that, while the arbitration agreement may bar the imposition of monetary damages against appellee, other forms of remedies against appellee are available, such as specific performance and declaratory and injunctive relief. Appellant maintains that the limitation of a remedy does not render the parties' obligations lacking in mutuality.

An order denying a motion to compel arbitration is an immediately appealable order. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005). We review the circuit court's order denying a motion to compel de novo on the record. *Id.* This court has held that arbitration is simply a matter of contract between the parties and the question of whether a dispute should be submitted to arbitration is a matter of contract construction. *BancorpSouth Bank v. Shields*, 2011 Ark. 503, 385 S.W.3d 805. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally, thus we will seek to give effect to the intent of the parties as

evidenced by the arbitration agreement itself. *E–Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

As we have observed, the essential elements of a contract are (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Foundation Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). This court has recognized that mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *Asbury Automotive Used Car Ctr., L.L.C. v. Brosh*, 364 Ark. 386, 220 S.W.3d 637 (2005). A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004). Mutuality within the arbitration agreement itself is also required. *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002). There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system. *Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002). Thus, under Arkansas law, mutuality requires that the terms of the agreement impose real liability upon both parties. *Harris, supra.* A lack of mutuality to arbitrate in an arbitration clause renders the clause invalid. *Brosh, supra.*

In the "check cashing" cases, this court has consistently held that, where one party retains to itself the right to seek judicial

relief, while the other party is strictly limited to arbitration, there is no mutuality of obligation. *Id.* We have applied this rule in other contexts as well. For instance, in *Archer, supra,* we held that an arbitration agreement lacked the necessary mutuality of obligation where swine producers were limited to pursuing any grievance in an arbitration forum while Tyson retained the sole right to pursue legal and equitable remedies in a judicial forum. In *Brosh, supra,* we also found the absence of mutuality where Asbury had the right to pursue legal or equitable relief outside arbitration, while the other parties were strictly limited to arbitration.

In the present case, the PPA provides that "[u]nder no circumstances shall an arbitration panel be vested with authority or jurisdiction to determine or add monetary damages (by way of setoff, counterclaim, directly or otherwise) or any other legal relief against the [appellee] or its officers, agents or employees." As previously noted, mutuality requires that the terms of the agreement impose real liability upon both parties. *Brosh, supra.* As written, this limitation of jurisdiction precludes the arbitration panel from enforcing appellee's primary obligation under the PPA, which is to purchase the electrical power supplied by appellant. Thus, on its face, the provision treats the parties differently, and this disparate treatment results in a lack of mutuality. Consequently, we affirm the circuit court's decision that the arbitration agreement suffers from the lack of mutuality and is unenforceable.

We acknowledge appellant's citation to the court of appeals's decision in *Hamilton v. Ford Motor Credit Co.,* 99 Ark.App. 124, 257 S.W.3d 566 (2007). In *Hamilton,* the court of appeals held that the parties' arbitration agreement did not lack mutuality where both parties had the right to arbitrate certain issues and where both parties had the right to litigate certain other issues in a court of law. In the present case, however, only appellant reserved the right to seek recourse in a judicial forum, while appellee was not afforded that option. Therefore, appellant's reliance on *Hamilton* is unavailing. Moreover, opinions of the court of appeals do not have any binding effect on this court. *Williams v. State,* 351 Ark. 215, 91 S.W.3d 54 (2002).

We also note that appellee advances several alternative arguments in its brief to support the circuit court's decision. We have no need to address these issues because we affirm based on the lack of mutuality. *Advance Am. Servicing of Ark., Inc. v. McGinnis,* 375 Ark. 24, 289 S.W.3d 37 (2008).

Affirmed.