SLIP OPINION



Cite as 2016 Ark. 116

# SUPREME COURT OF ARKANSAS

No. CV–15–107

|  |  |
|---|---|
| BANK OF THE OZARKS, INC., AND BANK OF THE OZARKS          APPELLANTS | Opinion Delivered March 17, 2016 <br><br> APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. CV-2011-777] |
| V. |  |
| ROBERT WALKER, ANN B. HINES, AND JUDITH BELK <br>         APPELLEES | HONORABLE SANDY HUCKABEE, JUDGE <br><br> AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

In *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, 434 S.W.3d 357, the circuit court denied the motion of appellants Bank of the Ozarks, Inc., and Bank of the Ozarks (Ozarks) to compel the arbitration of a class-action complaint filed by appellees, Robert Walker, Ann B. Hines, and Judith Belk on the ground that the arbitration provision in the account agreement between Ozarks and the appellees was unconscionable. This court reversed and remanded the circuit court's decision, holding that the circuit court must first determine, as a threshold issue, whether there was a valid agreement to arbitrate between Ozarks and appellees.

On remand, the circuit court concluded that there was not a valid agreement to arbitrate. Particularly, the circuit court found that there was neither a mutual agreement nor a mutual obligation. Ozarks appeals from the circuit court's decision. On appeal, Ozarks contends that the circuit court erred in concluding that neither mutual agreement nor mutual obligation was shown. We affirm the circuit court's decision to deny Ozarks's motion to compel arbitration.

SLIP OPINION

Our jurisdiction is established by Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure–Civil, which provides that an order denying a motion to compel arbitration is an immediately appealable order. On appeal, we review the circuit court's order denying the motion to compel de novo on the record and determine the issue as a matter of law. *Walker*, 2014 Ark 223, at 4, 434 S.W.3d at 360. The parties in this matter do not dispute that the Federal Arbitration Act applies to the agreement. Even though an arbitration provision is subject to the Act, courts look to state contract law to decide whether the parties' agreement to arbitrate is valid, and the same rules of construction that apply to agreements in general also apply to arbitration agreements. *Id.*, 434 S.W.3d at 360. As we noted in *Walker*, the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Id.*, 434 S.W.3d at 360.

At issue here are the 2007, 2011, and 2013 versions of the account agreement between appellees, who are Ozarks's customers, and Ozarks, which holds the accounts. Those agreements included the following arbitration provision:

> ARBITRATION. You or we may require that any controversy or claim relating to this agreement, or breach of it, be resolved through arbitration administered by the American Arbitration Association under its commercial rules. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction.

The 2007 and 2011 agreements also contained several other provisions pertinent to the circuit court's ruling.

> LAW, JURISDICTION, AND VENUE. The laws of Arkansas govern this agreement. The courts of that state have jurisdiction of any dispute in connection with this agreement. You agree that venue will be proper in the courts in the county and city of our office where you signed or delivered this agreement.

SLIP OPINION

> WAIVER OF JURY TRIAL. You waive your right to a jury trial in any dispute with us. Such disputes may be tried before a judge only.
>
> . . . .
>
> EXPENSES. You will pay any expenses we incur in good faith related to this agreement, such as fees on items sent for collection, foreign exchange charges; and unreimbursed research and copying fees when someone requires records about our relationship, and attorneys' fees we incur in good faith because of concerns about the account, whether or not litigation has begun, including such fees through trial and all appeals, plus court costs. You also agree to pay any expense that we incur, including attorneys' fees in responding to any subpoena, writ, government agency or judicial order, search warrant, or other order which we may be required to respond to regarding your account or your relationship with us.
>
> . . . .
>
> NO WAIVER. Failure to insist on your strict performance of any obligation under this agreement will not create any duty on our part to continue to do so. You will not claim that we waived our right to insist on proper performance.

Rather than a "NO WAIVER" provision, the 2013 agreement provided as follows:

> OUR WAIVER OF RIGHTS. You understand and agree that no delay or failure on our part to exercise any right, remedy, power or privilege available to us under this Agreement shall affect or preclude our future exercise of that right, remedy, power or privilege.

With respect to expenses, the 2013 agreement provided as follows:

> ATTORNEY FEES AND EXPENSES. You agree to be liable to us for any loss, costs or expenses, including reasonable attorneys' fees to the extent permitted by law, that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs or expense from your account without prior notice to you. This obligation includes disputes between yourself and us involving the account and situations where we become involved in disputes between you and an authorized signer, another joint owner, or a third party claiming an interest in the account. It also includes situations where you, an authorized signer, another joint owner, or a third party takes action with respect to the account that causes us, in good faith, to seek the advice of counsel, whether or not we actually become involved in a dispute.

There were only minor differences in the following provision of the 2013 agreement as follows:

> LAW, JURISDICTION, AND VENUE. This agreement and the account shall be governed by the laws of the state where the branch at which the account was opened is located. The courts of that state have jurisdiction of any dispute in connection with this agreement. You agree that venue will be proper in the courts in the county and city of our office where the branch at which the account was opened or located.

On remand, the circuit court found that the account agreements defining the parties' relationships did not establish either a mutual agreement or a mutual obligation. On the element of mutual agreement, the court noted that the account agreement provided that Arkansas courts have jurisdiction of any dispute and that any dispute was to be tried before a judge. The court also observed that Ozarks was also "seeking to enforce the arbitration provision in the same subject contract" and compel appellees to arbitrate. Based on this dissonance, the court found that mutual agreement was lacking.

On the element of mutual obligation, the circuit court found the element missing for two reasons. First, the court noted that the agreement provided that "[f]ailure to insist on your strict performance of any obligation under this agreement will not create any duty on our part to continue to do so. You will not claim that we waived our right to insist on proper performance." Citing *Alltel Corp. v. Rosenow*, 2014 Ark. 375, the court concluded that there was no mutual obligation because this "NO WAIVER" provision extended to Ozarks, but not to its customers, appellees. Second, the court found that the account agreement required appellees to pay any expenses that Ozarks incurred in "good faith" when the disagreement or issue related to the account agreement, while not imposing the same obligation on Ozarks.

4

SLIP OPINION

On appeal, Ozarks argues that the presence of the "LAW, JURISDICTION, AND VENUE" and the "WAIVER OF JURY TRIAL" provisions do not vitiate mutual agreement of the parties. Ozarks argues that these provisions are not inconsistent with the arbitration clause because the clause makes clear that either Ozarks or appellees can compel arbitration, but neither is required to do so. Further, Ozarks contends that granting the courts of Arkansas jurisdiction does not create an inconsistency with the arbitration clause because these courts would have jurisdiction if arbitration was waived and would have jurisdiction over certain matters if arbitration ensued. Ozarks asserts that these clauses can be read harmoniously to give effect to all the provisions of the agreement.

Ozarks further challenges the court's finding that there was no mutuality of obligation. Ozarks first contends that the "NO WAIVER" clause does not defeat mutuality of obligation because the arbitration clause provides that either party "may require" the other to arbitrate, and if a customer elected to arbitrate, Ozarks could not litigate. Second, Ozarks contends that the "EXPENSES" clause and its imposition of costs on appellees does not destroy mutuality of obligation. Ozarks asserts that mutuality of obligation does not require that the provisions of a contract treat the parties identically or that an expenses provision be mutual. Ozarks further submits that the expenses provision of the agreement does not specifically mention arbitration. Also, Ozarks asserts that invalidating the arbitration clause on this basis would result in a per se rule that singles out or disfavors arbitration, which would violate *AT & T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011), and would employ what Ozarks describes as a "bootstrapping" argument to avoid arbitration that was rejected in *Buckeye Check Cashing, Inc.*

SLIP OPINION

*v. Cardegna*, 546 U.S. 440 (2006).

We first consider the circuit court's finding that there was no mutuality of obligation because the language in the agreement required appellees to pay the expenses that Ozarks incurred in good faith related to the agreement while not imposing the same obligation on Ozarks. We affirm the circuit court's decision. In effect, by imposing the entirety of the arbitration costs on appellees, the arbitration clause precluded appellees from "effectively vindicating [their] . . . rights in the arbitral forum." *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000). In *Green Tree*, the United States Supreme Court recognized that "the existence of large arbitration costs" could serve as the basis for holding an arbitration clause to be unenforceable. *Id.* at 90. The Court observed that the record revealed only the arbitration agreement's silence on the subject and thus concluded that the risk of prohibitive costs was too speculative to justify the invalidation of the arbitration agreement. *Id.* at 91. The Court ultimately held that the plaintiff in that case had not sufficiently demonstrated "the likelihood of incurring such costs." *Id.* at 92.

*Green Tree* supports our holding. The arbitration clause in the account agreement also did not contain a specific provision within it relating to costs of arbitration. In our case, however, the account agreement contained a separate provision related to expenses, placing on appellees the burden of paying any expenses that Ozarks incurred in good faith related to the account agreement, which would include arbitration expenses. In imposing all of the costs of arbitration on appellees, the parties in this case are treated differently, and "this disparate treatment results in a lack of mutuality." *Independence Cnty. v. City of Clarksville*, 2012 Ark. 17,

6

SLIP OPINION

at 8, 386 S.W.3d 395, 400 (affirming a circuit court's holding that an arbitration agreement lacked mutuality of obligation because the arbitration panel did not have the authority or the jurisdiction to award monetary damages or any other legal relief against one of the parties). The lack of mutuality in the arbitration clause renders the agreement invalid and unenforceable, and we hold that the circuit court did not err in denying the motion to compel arbitration on this basis.

Furthermore, we affirm the circuit court's finding that there was no mutual obligation because this "NO WAIVER" provision extended to Ozarks but not to appellees. We addressed a similar question in *Rosenow*. There, the agreement contained and arbitration clause providing that "[a]ny dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration." However, the agreement also provided, "If we do not enforce any right or remedy available under this Agreement, that failure is not a waiver." The court concluded that

> Alltel clearly reserved to itself the option of pursuing remedies other than arbitration, without the consequence of waiver. Moreover, that reservation and protection was limited solely to Alltel and was not extended to the customer. Succinctly put, Alltel provided itself with an "out" to the required arbitration; Alltel customers, such as Rosenow, however, were limited to pursuing relief against Alltel in the form of arbitration, while Alltel alone was provided absolution if it chose to pursue an alternate remedy.

*Rosenow*, 2014 Ark. 375, at 7. We further stated that an arbitration agreement lacks mutuality when one provision of a contract is inconsistent with the contract's arbitration clause and the two cannot be harmonized, and "despite both Alltel and its customers being bound to the

SLIP OPINION

remedy of arbitration, Alltel, and only Alltel, was permitted to reject that remedy without consequence." *Id.* at 8. We concluded that this disparate treatment resulted in lack of mutuality to arbitrate that rendered the agreement invalid and unenforceable.

Ozarks contends that the "NO WAIVER" and the "OUR WAIVER OF RIGHTS" clauses do not defeat mutuality of obligation because the arbitration clause does not treat the parties differently. Ozarks argues that rather than being mandatory, either party "may require" the other to arbitrate, and thus, if a customer elected to arbitrate, Ozarks could not litigate. As in *Rosenow*, however, only Ozarks is permitted to reject that remedy without that rejection serving as a subsequent waiver of pursuing remedies in court, and this disparate treatment results in a lack of mutuality to arbitrate that renders the agreement invalid and unenforceable. Thus, we affirm the circuit court's order denying Ozarks's motion to compel arbitration on this basis as well.

In reaching this conclusion, we do not defy *Buckeye*, which holds that it is improper for a court to consider a claim that a contract containing an arbitration clause is invalid as a whole when there is not also a claim that the arbitration clause is itself invalid. As we have previously stated, *Buckeye* does not hold that when considering the validity of an arbitration clause, a court is constrained to the clause itself and prohibited from considering other parts of the contract relating to the agreement to arbitrate disputes arising from the contract. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 375 Ark. 24, 35–36, 289 S.W.3d 37, 45 (2008). Moreover, as we explained in *Rosenow*, as we would do with any other contract, this court considers in the first

instance the doctrine of mutuality of obligation to determine whether there is a valid agreement to arbitrate. *Rosenow*, 2014 Ark 375, at 6. Thus, we do not treat agreements to arbitrate differently than other contracts, and our analysis here thus does not violate *Concepcion*.

Because we affirm the circuit court's finding that the agreement lacked mutuality of obligation, we need not address Ozarks's assertion that the circuit court erred in finding that the agreement also lacked mutuality of agreement.

Affirmed.

Special Justice WALTER B. COX joins in this opinion.

GOODSON, J., concurs in part and dissents in part.

WOOD, J., not participating.

**COURTNEY HUDSON GOODSON, Justice, concurring in part and dissenting in part.** In part, I join the majority's decision to affirm the circuit court's denial of the motion to compel arbitration. I concur in the majority's conclusion that mutuality of obligation is lacking based on the no-waiver clause of the agreement pursuant to this court's decision in *Alltel Corp. v. Rosenow*, 2014 Ark. 375. Although I dissented in that case, *see Rosenow*, *supra* (Goodson, J., dissenting), stare decisis dictates the same result here. However, I cannot join the majority's decision that mutuality of obligation is absent because the agreement provides that Ozarks's customers are to pay expenses, which includes attorney's fees, that are incurred in connection with arbitration.

SLIP OPINION

This court follows the American rule, which requires every litigant to bear his or her attorney's fees absent statutory authority or a contractual agreement between the parties. *Carter v. Cline*, 2013 Ark. 398, 430 S.W.3d 22; *Griffin v. First Nat'l Bank of Crossett*, 318 Ark. 848, 888 S.W.2d 306 (1994); *Damron v. Univ. Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402 (1988). In *Griffin*, we held quite clearly that a contractual provision requiring one party to pay the other party's expenses and attorney's fees is enforceable "in accordance with its terms." *Griffin*, 318 Ark. at 856, 888 S.W.2d at 311. Because the beneficiary of that provision was the prevailing party, we reversed and remanded with directions for the trial court to award reasonable attorney's fees and expenses incurred in the litigation.

The Supreme Court has mandated that arbitration agreements are to be placed on "equal footing with all other contracts." *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015). The converse is also true, as the law this court applies on mutuality of obligation to arbitration agreements must also be applied with equal force to other contracts. The rule of law pronounced by the majority in this case regarding mutuality of obligation unnecessarily calls into question not only the validity of attorney's fees and cost provisions as they pertain to arbitration agreements, but it also casts doubt on the legitimacy of other contracts that contain like terms, as well as our decision in *Griffin* and its progeny. It is completely gratuitous for the majority to embark on this course when the circuit court's decision must be affirmed based on the no-waiver provision and the holding in *Rosenow*. Accordingly, I dissent from the

10

majority's conclusion that the agreement fails for lack of mutuality of obligation based on the provision regarding expenses and attorney's fees.

Before concluding this opinion, I must point out that, prior to the decision in *Rosenow*, this court's jurisprudence regarding mutuality of obligation in the context of arbitration agreements was based on the notion that there is no mutuality of obligation where one party retains the right to seek judicial relief, while the other party is strictly limited to arbitration. *Independence Cty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395. This was so because, under Arkansas law, mutuality requires that the terms of the agreement fix real liability upon both parties. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). In *Rosenow*, this court expanded that concept by holding that mutuality of obligation is lacking where a party shields itself from the waiver of contractual rights, while not affording the other party the same privilege. The majority in the present case advances this principle one step farther in its conclusion that an agreement lacks mutuality of obligation where one party is obligated to pay expenses and attorney's fees incurred in good faith by the other party.[1] However, in our contracts law, we have recognized that mutuality of obligation does not mean

---

[1] In support of its holding, the majority singles out a passage from *Independence County*, *supra*, stating that "disparate treatment results in a lack of mutuality." However, that quotation is taken entirely out of context, repeating a mistake that was also made by the *Rosenow* court. In *Independence County*, mutuality of obligation was lacking because the arbitration agreement contained a provision limiting the arbitrator's jurisdiction in such a way that one party reserved the right to seek recourse in a judicial forum, while the other party was strictly bound to arbitrate all claims. In other words, only one party had the keys to the courthouse.

SLIP OPINION

that the promisor's obligation must be exactly coextensive with that of the promisee. *Linder v. Mid-Continent Petroleum Corp.*, 221 Ark. 241, 252 S.W.2d 631 (1952). Indeed, this court has said that a contract does not lack mutuality merely because every obligation of one party is not met by an equivalent counter obligation of the other party. *Johnson v. Johnson*, 188 Ark. 992, 68 S.W.2d 465 (1934). With the decision in this case, the majority stretches the concept of mutuality of obligation so as to undermine our basic principles of contract law.

*Rose Law Firm, A Professional Association*, by: *Richard T. Donovan*, *Amanda K. Wofford*, and *Betsy Turner-Fry*, for appellants.

*Carney Bates & Pulliam, PLLC*, by: *Randall K. Pulliam*, *Allen Carney*, and *John C. Williams*, for appellees.